**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KENNARD B.,[1]

        Plaintiff,

   v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

        Defendant.

No. 8:25-cv-00520-AJR

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

Kennard B. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income ("SSI").  The parties consented, pursuant to 28 U.S.C. § 636(c), to the

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Commissioner Frank Bisignano is substituted in as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

jurisdiction of the undersigned United States Magistrate Judge.  (Dkts. 6, 10, 11.)  For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

## PROCEDURAL HISTORY

On July 1, 2020, Plaintiff filed applications for DIB and SSI, alleging disability commencing April 1, 2020.  (Dkt. 9-7 at 34-42.)  The Commissioner denied the claims by initial determination on October 12, 2020, (Dkt. 9-5 at 8-12), and upon reconsideration on July 21, 2021.  (Id. at 14-20.)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  (Id. at 27-28.)  On May 11, 2022, Administrative Law Judge Stacy Zimmerman (the "ALJ") conducted a telephonic hearing[3] and subsequently published an unfavorable decision on July 27, 2022.  (Dkt. 9-3 at 40-59, 65-90.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on August 4, 2022.  (Dkt. 9-6 at 33-38.)  The Appeals Council denied Plaintiff's request for review on April 20, 2023.  (Dkt. 9-3 at 34-39.)  On that date, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must

---

[3] The ALJ conducted the hearing telephonically due to the COVID-19 pandemic.  (Dkt. 9-3 at 67.)  Plaintiff was represented by an attorney at the hearing and agreed to conduct the proceeding telephonically.  (Id. at 68; Dkt. 9-5 at 50-51.)

render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)    Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)    Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)    Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

3

416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## IV.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 9-3 at 43-53.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2020, the alleged onset date. (Id. at 46.) At step two, the ALJ found that Plaintiff had the following severe impairments: congestive heart failure and cardiomyopathy with automatic implantable cardiac defibrillator in place; chronic kidney disease; hypertension; diabetes; and obesity. (Id.) The ALJ also determined that Plaintiff had the non-severe impairments of gout and high cholesterol. (Id. at 46-47.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings in the regulations. (Id. at 47.)

The ALJ assessed Plaintiff's RFC and concluded that he could perform light work with the limitations that:

> he can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 4 hours in an 8-hour day, and sit 6 hours in an 8-hour day. He can never climb ladders, ropes, or scaffolds. He can

4

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  He cannot be exposed to hazards, such as unprotected heights or dangerous moving machinery.  He can occasionally be exposed to extreme cold and extreme heat.  He can occasionally be exposed to humidity.

(Id. (bold omitted).)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Id. at 48.)

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a "software engineer and a composite job consisting of a software engineer and a programmer analyst."  (Id. at 51 (bold omitted).)  The ALJ did not proceed past step four in the alternative.  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from April 1, 2020, the alleged onset date, through the date of the ALJ's decision.  (Id. at 52.)

## V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VI.

## DISCUSSION

Plaintiff raises a single ground for relief. Petitioner claims that the ALJ's RFC determination was erroneous because the ALJ failed to properly evaluate the opinions of medical expert, Subramanian Krishnamurthi, M.D., and State agency medical consultants. (Dkt. 12 at 8-15.) Defendant contends that the ALJ properly relied on Dr. Krishnamurthi's opinion and the State agency medical consultants' prior administrative medical findings ("PAMFs") by considering the consistency and supportability of the opinions and, thus, substantial evidence supported the RFC determination. (Dkt. 16 at 4-6.) For the reasons set forth below, the Court affirms the decision of the Commissioner.

### A.      Dr. Krishnamurthi's Medical Opinion.

At the May 2022 hearing, Dr. Krishnamurthi testified as a medical expert. (Dkt. 9-3 at 72-75.) After reviewing the medical evidence in the record, Dr. Krishnamurthi, who was board certified in internal medicine and cardiology, found

6

Plaintiff suffered from diabetes, high blood pressure, cardiomyopathy, atrial fibrillation, gout, chronic kidney disease, and obesity (with a BMI of 29), all of which constituted severe impairments. (Id. at 73.) He testified that, although the impairments did not meet or equal any of Agency's listings of impairments, they would result in functional impairments. (Id.) Specifically, he opined that Plaintiff was:

> Able to lift frequently 10 pounds, occasionally 20 pounds, and sit six out of eight, stand and walk together a total of four out of eight, use of the upper extremities, reaching, handling, fingering, feeling, grasping, maneuver, no limitations, postural, climb ladders, scaffolds or ropes, climb stairs, bend, stoop, crawl, crouch, kneel, all on occasional, no heights, no dangerous machineries, avoid humidity, occasional. Avoid extreme temperatures, heat or cold, to occasional.

(Id. at 73-74.)

The ALJ asked Dr. Krishnamurthi what he based these limitations on. (Id. at 74.) Dr. Krishnamurthi indicated that he relied on March 2020 treatment notes from Dr. Stefan Reynoso, who diagnosed Plaintiff with hypertension, chronic kidney disease, atrial fibrillation, cardiomyopathy, gout, and diabetes with an A1C level at 9.6. (Id.; Dkt. 9-9 at 55-59.) Dr. Reynoso's treatment notes indicated that Plaintiff currently was "doing very well" and had "no major concerns." (Dkt. 9-9 at 55.)

Dr. Krishnamurthi also reviewed July 2020 progress notes from Dr. Amanda Donohue, August 2020 progress notes Dr. Nikhil Warrier, and December 2020 progress notes from nurse practitioner Kerry Wood, all of whom treated Plaintiff's cardiomyopathy. (Dkt. 9-3 at 74; 9-9 at 97-105.) At his July and August visits, Plaintiff reported having "no chest pain," dizziness, shortness of breath or syncope and indicated he was "feeling well" and able to walk four times per week for 30 minutes. (Dkt. 9-3 at 74; Dkt. 9-9 at 97, 100.) Dr. Krishnamurthi noted Plaintiff's

cardiac history, which included ventral fibrillation for which he received an ICD implant, and a recent echocardiogram showing heart flexion at 35-40%. (Dkt. 9-3 at 74; Dkt. 9-9 at 97, 100, 105.)

In forming his opinion, Dr. Krishnamurthi also indicated that he relied on January 2022 laboratory results relating to Plaintiff's kidney disease, showing a 2.8 creatinine serum level, and a May 2021 echocardiogram showing a heart ejection fraction of 25-30%. (Dkt. 9-3 at 74-75; Dkt. 9-9 at 138; Dkt. 9-11 at 31-32.)

Finally, Plaintiff's counsel asked whether his opinion would change taking into consideration Plaintiff's BMI of 29, to which Dr. Krishnamurthi indicated he had considered that and opined that Plaintiff "should be able to function even with that BMI." (Dkt. 9-3 at 75.)

**B.      The State Agency Consultants.**

On initial review, State agency consultant J. Rule, M.D., determined that Plaintiff had exertional limitations of occasional lifting of 20 pounds, frequent lifting of 10 pounds, and could stand/walk/sit for six hours in an eight-hour day. (Dkt. 9-4 at 21, 32.) Plaintiff also had postural limitations to climbing ramps/stairs frequently; climbing ladders/ropes/scaffolds occasionally; and balancing, kneeling, stooping, crouching, and crawling frequently. (Id.) On reconsideration, State agency consultant J. Berry, M.D., also recommended the same exertional and postural limitations. (Id. at 48, 61-62.)

**C.      Legal Standard.**

"When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at face value." Cross v. O'Malley, 89 F.4th 1211, 1213 (9th Cir. 2024) (internal quotation marks omitted). Instead, "the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." Id. at 1213-14. For applications filed on or after March 27, 2017, the ALJ will not "defer or give any specific evidentiary weight to

8

any medical opinions," but instead "must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: supportability and consistency." Id. at 1214 (internal quotation marks omitted).

An ALJ cannot reject a medical source's opinion without providing an explanation supported by substantial evidence. See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." Id. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ's articulation of persuasiveness must show the grounds actually relied upon for the final decision. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

**D.     Analysis.**

The ALJ "fully considered" the medical opinion of Dr. Krishnamurthi, who testified at the hearing as an impartial medical expert. The ALJ found his opinion on Plaintiff's functional limitations persuasive because "[i]t falls within Dr. Krishnamurthi's area of expertise as a board certified internist and cardiologist," he "reviewed the medical evidence," and "his opinion is consistent with that evidence." (Dkt. 9-3 at 50.) The ALJ also noted that "Dr. Krishnamurthi supported his opinion with explanation and citation to the evidence, and he testified at the hearing and was available for cross-examination." (Id.)

The Court concludes that the ALJ's findings with regard to consistency and supportability are supported by substantial evidence in the record. As the ALJ stated, Dr. Krishnamurthi testified at the hearing regarding the medical record he relied on in determining Plaintiff's functional limitations, which included treatment

9

notes from multiple examinations by several doctors.  In his testimony, Dr. Krishnamurthi acknowledged Plaintiff's "severe" impairments, including prior heart failure, hypertension, chronic kidney disease, atrial fibrillation, cardiomyopathy, and diabetes, but identified treatment notes in July and August 2020 showing Plaintiff was "feeling well" and "walk[ing] four times per week for 30 minutes."  (Id. at 74; Dkt. 9-9 at 97, 100.)  Those same treatment notes indicated Plaintiff reported having "no chest pain," dizziness, shortness of breath or syncope.  (Dkt. 9-9 at 97, 100.)  Dr. Krishnamurthi also relied on a progress note from March 2020, indicating Plaintiff was being treated for diabetes and hypertension, in which Plaintiff reported "doing very well" with "no major complaints" and denying any chest pain or fatigue.  (Dkt. 9-3 at 74; Dkt. 9-9 at 55.)

The ALJ also considered and found "persuasive" the PAMFs of the State agency medical consultants, who opined that Plaintiff should be limited to light exertional work.  (Dkt. 9-3 at 50-51.)  The ALJ determined that the PAMFs were "supported by the consultants' review of the evidence and are generally consistent with Dr. Krishnamurthi's medical opinion and with the medical [record]."  (Id. at 51.)  The ALJ found Dr. Krishnamurthi's opinion—which gave stricter functional limitations[4]—"more persuasive" because Dr. Krishnamurthi "reviewed more of the evidence, he testified at the hearing, and he has expertise in the areas of internal medicine and cardiology."  (Id.)

In formulating Plaintiff's RFC, Plaintiff complains that the ALJ failed to consider the medical opinions of Dr. Javed N. Sadiq and Dr. Gaytri Manek.  (Dkt. 12 at 13-14.)  Defendant argues that "none of the cited records offers an opinion on Plaintiff's functionality, and, therefore, they are not medical opinions."  (Dkt. 16 at 5.)  Under 20 C.F.R. § 404.1513(a)(2), a "medical opinion" is a "statement from a

---

[4] Specifically, Dr. Krishnamurthi opined that Plaintiff could only stand/walk for four hours in an eight-hour workday and could only occasionally climb stairs and ramps.  (Dkt. 9-3 at 73-74.)

medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in various work-related functional areas.  20 C.F.R. § 404.1513(a)(2).  Defendant is correct that the examination notes from Dr. Sadiq and Dr. Manek do not amount to a medical opinion under 20 C.F.R. § 404.1513(a)(2).  (See Dkt. 9-9 at 143-58; Dkt. 9-10 at 6-11.)

Dr. Sadiq, a gastrointestinal and liver consultant, performed medical examinations in December 2021 and February 2022, finding Plaintiff suffered from anemia, macrocytic anemia, and congestive heart failure, and advising him to follow up with a cardiologist for possible heart valve replacement.  (Dkt. 9-10 at 8, 11.) Dr. Manek, who Plaintiff saw for a renal consultation from June 2021 to January 2022, assessed Plaintiff with chronic kidney disease due to diabetic nephropathy, cardiomyopathy with AIC in place, hypertension, diabetes mellitus type II, anemia, hyperkalemia, metabolic acidosis, and vitamin D deficiency, and recommended Plaintiff follow a low-salt diet, eat less meat, drink two liters of water per day, and take sodium bicarbonate pills.  (Dkt. 9-9 at 153-54.)  Neither doctor, however, made any statement in their treatment notes regarding Plaintiff's functional limitations or restrictions due to these impairments.  Accordingly, these were not medical opinions that the ALJ was required to address.  See Kaminski v. Kijakazi, 856 F.App'x 735, 736 (9th Cir. 2021) ("Because the treating psychiatrists' treatment notes offered no opinion about the severity of Kaminski's mental impairments or any functional limitations that those impairments caused, they are not medical opinions that the ALJ must address in its disability determination."); Yvonne M. v. Kijakazi, 2022 WL 3702103, at *4 (N.D. Cal. Aug. 26, 2022) ("Treatment notes that do not address [p]laintiff's functional abilities or limitations are not considered medical opinions the ALJ needed to evaluate.").

Moreover, to the extent that Plaintiff argues that the ALJ did not consider this

evidence at all in his decision, Plaintiff is mistaken.  The ALJ explicitly indicated that he carefully considered "all the evidence" in rendering his decision.  (Dkt. 9-3 at 44.)  Moreover, in giving his medical opinion at the hearing, Dr. Krishnamurthi testified that he had reviewed all the medical evidence, which included the medical records of Drs. Sadiq and Manek.  (Dkt. 9-3 at 59, 72-73.)  The ALJ found Dr. Krishnamurthi's medical opinion was more persuasive than the State agency medical consultants' PAMFs, in part, because Dr. Krishnamurthi had reviewed more of the medical evidence and, thus, adopted his more restrictive limitations in formulating the RFC.  (Dkt. 9-3 at 51.)  The ALJ is not required to discuss every piece of evidence in their decision.  Here, Plaintiff offers no argument on how the cited records from Drs. Sadiq and Manek required more restrictive limitations than the RFC adopted by the ALJ.  As such, the ALJ did not err by failing to discuss the treatment notes from Drs. Sadiq and Manek.  See Kilpatrick v. Kijakazi, 35 F.4th 1187, 1193 (9th Cir. 2022) ("To engage in meaningful review of a disability claim, an ALJ may not ignore significant probative evidence that bears on the disability analysis.  But at the same time, a rule requiring ALJs to address every argument or piece of evidence, however meritless or immaterial, would unduly detain ALJs in their orderly consideration of Social Security disability benefits claims.").

Finally, Plaintiff suggests that if the ALJ had properly considered all the medical opinions, the ALJ would have determined that Plaintiff was disabled because the VE testified that if an individual were off-task 15 percent of the workday there would be no jobs that such an individual could perform.  (Dkt. 9-3 at 89; Dkt. 12 at 15.)  Plaintiff, however, points to no medical opinion or other evidence supporting such a limitation.  See Burch v. Barnhart, 400 F.3d 676, 683-84 (9th Cir. 2005) (upholding ALJ's RFC determination when claimant failed to present any functional limitations caused by diagnosis, and the record contained no evidence of any such limitations).

In sum, the ALJ considered and found "persuasive" the PAMFs of the State agency medical consultants, who opined that Plaintiff should be limited to light exertional work.  (Dkt. 9-3 at 50-51.)  In formulating Plaintiff's RFC, the ALJ adopted Dr. Krishnamurthi's stricter functional limitations because Dr. Krishnamurthi "reviewed more of the evidence, he testified at the hearing, and he has expertise in the areas of internal medicine and cardiology."  (Id. at 51.)  The ALJ explicitly found that the opinions of Dr. Krishnamurthi and the State agency medical consultants were consistent with one another and supported by the record and cited substantial evidence to that effect.  (Id. at 50-51.)

## VII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 6, 2026   _____

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

13